### Bill Gribble and Earl Shores v. The State.

No. 19136.  Delivered November 10, 1937.
Rehearing Denied January 12, 1938.

The opinion states the case.

*R. D. Oswalt,* of Crowell, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for three years.

On the night of the 7th of December, 1936, the place of business of the West Texas Utilities Company in Crowell, Texas, was burglarized and $39.13 taken therefrom.  C. R. Seale, who was in charge of the business of the corporation at Crowell, testified that the company used a rubber "paid" stamp which at times was placed on the currency in the cash drawer.  Frequently the purple ink on the stamp colored the currency.  The witness testified further that the burglarized building had been

entered through the back door. At this juncture we quote his testimony, as follows:

"I will explain just what I found with reference to that door or place where the building was entered over there. The building was entered at the back; there is a hasp with a staple and padlock on the back door, and some instrument had been placed into this staple and twisted it off. On the west door of the building there are several marks; this door was not entered but there was several marks on the door of this building that were made by a tool similar to this. We took this tool and fitted it in and its fits very nicely into the marks of the wood where the tool would be jammed between the door facing and the door in prying this up. This tool fits exactly into those marks made in the door. I do not recall any mark on the safe that that little nick fit into, just now. The end of this tool fits exactly into the marks on the door.

"As to what I know about this screwdriver, will state that on the west door of the office is a steel part of the lock, not a part of the lock but the part that the catch on the door fits into and the lock come together on the door, there is a place where a screwdriver, I wouldn't say a screwdriver but a tool that looked as though it was a screwdriver, it was a tool flat on the end and then round, had been placed between these two metal members, the part of the lock on the door and the part on the facing, and you could see that it was pushed in there and had been pulled around so that the outside of the door passed the metal on the lock and the wood is mashed in where a round instrument was put in there and twisted around, very similar to the mark that a screwdriver of this type would make if you pushed it into a door and twisted it around like that.

"In regard to some mark or coloring on the dollar bill which you have handed me, will state that there is a little bit of what looks to be ink on there, very similar to the ink used in our stamp pad in the office."

It appears that the perpetrators of the burglary knocked the knob off of the safe.

On the night of the burglary the appellants were together at the home of the appellant Bill Gribble, where a party was in progress. They left the party and later appellant Gribble returned home in the car of appellant Shores. As the car stopped an unidentified person jumped out and ran away. A witness testified that when appellant Gribble returned home he observed him hand his wife what he thought was money. A tire tool

which was taken from the car of appellant Shores after the burglary had paint on it exactly like that on the burglarized building. This tool was placed in the marks on the door where the entry had been made, and was an exact fit. It had a niche in it which corresponded with the marking on the door. The proof was to the further effect that the tools taken from the car after the burglary belonged to the appellant Shores. Appellant Shores was arrested shortly after the burglary in Vernon, Texas, which was about thirty miles distant from Crowell. He was in possession of his automobile at the time. The arresting officer testified that appellant Shores had in his possession at the time of the arrest about $19.60. A one dollar bill which was taken from his possession had purple ink on it. A witness who examined the ink under a microscope testified that it was the same color as the ink on the stamp that had been placed by the Utilities Company on the currency in the cash drawer.

The appellant did not testify. The wife of the appellant Gribble denied in her testimony that she had received any money from her husband on the night of the burglary.

We are unable to agree with appellants that the evidence is insufficient.

Appellants bring forward two bills of exception in which they complain of certain statements of the district attorney which they assert constituted a reference to their failure to testify. In the first bill it is shown that the district attorney stated, in substance, that it was undisputed that the appellant Shores was in Crowell on the night of the burglary. The bill is defective in failing to show that Shores did not in fact testify and is further defective in failing to show that appellant Shores alone could have denied that he was in Crowell on the occasion in question.

The next bill relating to the argument of the district attorney shows that he stated, in substance, to the jury that the appellants had not offered any explanation why there was mud "on this instrument." This bill is also defective in failing to show that the appellants alone could have explained the condition of said instrument.

The burglarized building belonged to the West Texas Utilities Company, a corporation. C. R. Seale was in charge of the business of the corporation. He testified: "I am manager of the West Texas Utility Company and I have the care, custody and control of the property over there in the office and did have on the 7th day of December (referring to the date of the bur-

glary)." The indictment alleged that Mr. Seale occupied and controlled the burglarized building, and that the property therein belonged to him. It is appellants' contention that, inasmuch as the proof showed that the building belonged to a corporation, a fatal variance is presented. This contention cannot be sustained.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—This is a case depending upon circumstantial evidence alone for a conviction, and complaint is made in the motion relative to the sufficiency of the testimony to support a conviction. This matter was thoroughly gone into in the original opinion herein, and we can see no good reason for a further discussion. The testimony was therein deemed sufficient, and seems to us to still be sufficient to show these two parties to have been the ones who committed the offense charged. The bills of exception were also treated when we wrote originally, and after a careful consideration thereof we see no reason to recede from our former position.

The motion for a rehearing will be overruled.

*Overruled.*